**Edward J. STACK, Plaintiff,**

v.

**Tom ADAMS, as Secretary of the State of Florida, Defendant.**

**Civ. A. No. 1613.**

United States District Court,
N. D. Florida,
Tallahassee Division.

July 17, 1970.

---

Joseph C. Jacobs and N. Sanders Sauls, Ervin, Pennington, Varn & Jacobs, Tallahassee, Fla., for plaintiff.

Ronald W. Sabo, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendant.

Before SIMPSON, Circuit Judge and SCOTT and ARNOW, District Judges.

## OPINION AND JUDGMENT

PER CURIAM:

This case is before this Court for final decision on the merits.

Involved is a recent law pertaining to elections adopted by the Legislature of Florida, Chapter 70–80, Laws of Florida, the part of which pertinent to this decision reads as follows:

(2) No individual may qualify as a candidate for public office who holds another elective or appointive office, whether state, county or municipal, the term of which or any part thereof runs concurrent to the term of office for which he seeks to qualify without resigning from such office not less than ten (10) days prior to the first day of qualifying for the office he intends to seek. Said resignation shall be effective not later than the date upon which he would assume office, if elected to the office to which he seeks

to qualify, or the expiration date of the term of the office which he presently holds, or the general election day at which his successor is elected, whichever occurs earlier. With regard to elective offices said resignation shall create a vacancy in said office thereby permitting persons to qualify as candidates for nomination and election to that office, in the same manner as if the term of such public officer were otherwise scheduled to expire; or, in regard to elective municipal or home rule charter county offices, said resignation shall create a vacancy which may be filled for the unexpired term of the resigned officer in such manner as provided in the municipal or county charter. This does not apply to political party offices.

(3) Any incumbent public officer whose term of office or any part thereof runs concurrent to the term of office for which he seeks to qualify and who desires to resign his office pursuant to the provisions of this act shall execute an instrument in writing directed to the governor irrevocably resigning from the office he currently occupies. The resignation shall be presented to the governor with a copy to the department of state. The resignation shall become effective and shall have the effect of creating a vacancy in office as provided herein, and the public officer shall continue to serve until his successor is elected or the vacancy otherwise filled as provided above in subsection (2).

(4) Nothing contained in this act shall relate to persons holding any federal office.

Article 1, Section 2, Clause 2 of the Constitution of the United States of America describes the qualifications for the office of United States Representative as follows:

No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

Under the admitted facts before this Court, the Plaintiff possesses these qualifications. He also holds the office of Sheriff of Broward County, Florida, and is presently serving in such office, with his current term of office ending December 31, 1972. On July 7, 1970, he presented all of the necessary qualifying papers and fees to the Defendant, as required by law, to qualify as a candidate for Representative to the Congress. The Defendant refused to accept the papers and fees for the reason that Plaintiff failed to resign from his present state public office, a condition precedent to qualifying for this office under and as required by the foregoing Chapter 70–80, Laws of Florida, 1970.

Plaintiff, in his complaint, says that he will resign as sheriff prior to the beginning of his term as Representative in the Congress in January, 1971, in the event he is elected, but that he does not desire to resign prior to that time, and contends that the statute of Florida requiring him so to do violates basic rights guaranteed to him by the United States Constitution.

His constitutional attack on the statute is fourfold:

1. The Florida statute attempts to add to the qualifications of a candidate for the office of United States Representative beyond those set forth in Article 1, Section 2, Clause 2, of the Constitution of the United States of America.

2. The statute arbitrarily and capriciously deprives Plaintiff of rights guaranteed to him under the First and Fourteenth Amendments to the United States Constitution.

3. The statute deprives Plaintiff of rights under the due process clause of the Fourteenth Amendment to the United States Constitution.

4. The statute deprives him of the equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution.

■ The Court concludes the statute is valid as against Plaintiff's challenge to it on First Amendment grounds. Pertinent here is a decision of the Supreme Court of the United States in United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), in which the Supreme Court of the United States held the Hatch Act valid and constitutional against similar attack. The holding and principles enunciated in that case, rendered by that Court two years after its decision in Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945), and cited at length by Plaintiff, is not in conflict with the earlier case. While First Amendment rights have come much more to the forefront in years since 1947 in various decisions, the force and effect of *United Public Workers of America*, supra, has not been altered or eroded. To the contrary, various courts faced with First Amendment challenges to the Hatch Act have had no difficulty in approving and adhering to the ruling in the case. Gray v. Macy, 239 F.Supp. 658 (D.Or.1965), reversed on other grounds, 358 F.2d 742 (9 Cir. 1966); Palmer v. United States Civil Service Commission, 297 F.2d 450 (7 Cir. 1962); Engelhardt v. United States Civil Service Commission, 197 F.Supp. 806 (M.D. Ala.1961), affd. 304 F.2d 882 (5 Cir. 1962); Democratic State Central Committee for Montgomery County v. Andolsek, 249 F.Supp. 1009 (D.Md.1966); Johnson v. State Civil Service Department, 280 Minn. 61, 157 N.W.2d 747 (1968); Wisconsin State Emp. Assn., etc. v. Wisconsin National Res. Bd., 298 F.Supp. 339 (W.D.Wis.1969).

The statute is also valid against the due process attack made upon it under Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) and cases referred to therein, holding that an unlawful denial by state action of a right to state political office is not a denial of right of property or of liberty secured by the due process clause. Moreover, this Florida act placing restriction on the right of a state office holder to seek election to office is not and cannot be considered to any extent an enactment that might infringe or impinge on any contractual or vested right Plaintiff might have by virtue of any decisions of Florida holding that he does have some kind of vested or contractual right in the state office to which he has been elected.

The statute is also valid against the equal protection challenge made by Plaintiff to it.

The statute prevents a state official from using the prestige or power of that office in seeking election to a higher or different office, with resignation made prospective to avoid cost of special elections in those cases where the laws of Florida would otherwise require such.

The classification is not without rational foundation and there is no invidious discrimination, nor palpable arbitrariness. Loving v. Virginia, 388 U.S. 1, 9, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Allied Stores of Ohio v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

■■ The challenge on the ground of violation of and conflict with the qualifications section of the United States Constitution is a different matter.*

That the qualifications prescribed in the United States Constitution are exclusive and that state constitutions and laws can neither add to nor take away from them is universally accepted and recognized. The state courts, passing on the question, have, in applying it to a variety of state laws, so held with singular unanimity, as examination of citations under Article 1, Section 2, Clause 2, U.S.C.A., discloses. A recent federal case also so holds. Exon v. Tiemann, 279 F.Supp. 609 (1968). The Supreme Court of the United States, in Powell v. McCormick, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), where it had

---

\* The basic difference between this suit and Deeb v. Adams, D.C., 315 F.Supp. 1299, decided today, is Plaintiff here seeks federal congressional office, rather than state office.

before it Article 1, Section 5, Clause 1 of the Constitution of the United States, providing that each house is the judge of the elections, returns and qualifications of its own members, went into the background and history of these clauses of the Constitution. Its holding in that case was that the House of Representatives of Congress has no authority to exclude any person duly elected by his constituents who meets all of the requirements for membership prescribed in the Constitution. The fundamental principle involved is the right of the people to elect whom they choose to elect for office.

Because of this, the Florida statute here involved does violate this section of the United States Constitution, in that it does provide an additional qualification not provided by the Constitution for election to Congress.

The act, in essence, provides that a state public office holder who has not resigned his state office in accordance with the Act cannot be a candidate for or be elected to Congress—it is a flat disqualification. Plaintiff, who has not resigned his office, even though he meets all of the qualifications prescribed by the United States Constitution, is, under the Florida act, disqualified to run because he is a state office holder of Florida, and has not resigned his position.

Even State ex rel. O'Sullivan v. Swanson, 127 Neb. 806, 257 N.W. 255 (1934), does not, in principle, depart from the holding of the other state cases. In *O'Sullivan*, the court pointed out that a person seeking to file in the next general election contrary to its statute might still run for the federal office and be elected on the write-in ballot, although he could not have his name placed upon the ballot at state expense. Such might have been a strong practical deterrent to election, but nonetheless, he could run. Under the Florida act, Plaintiff may not even be a candidate for election unless

he has first complied with the act by resignation.[1]

Nor does the ruling of the Supreme Court of the United States, in United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556 (1947), upholding the validity of the Hatch Act, in any way conflict. In the case, the plaintiff whose challenge the Supreme Court considered was not in any way seeking the right to run for office, so that the point was not even before the court. Beyond that, however, under the Hatch Act, a federal employee is not prevented from running for Congress—he may run, and the penalty provided by the act is loss of his public employment. Under the Florida act, the public office holder who does not resign in accordance with the act may not run for Congress, and the penalty is not the loss of his state public office, but disqualification as a candidate for election to Congress.

The invalidity of the statute, insofar as Plaintiff is concerned, may not be saved by construction of the Supreme Court of Florida, for in State ex rel. Davis v. Adams, etc., 238 So.2d 415, the Supreme Court of Florida has already construed the act. In so doing, it has held that "public office" as used in the phrase "No individual may qualify as a candidate for public office * * *" includes the office of Representative in the Congress of the United States.

This act of Florida does violate the qualification section of the Constitution of the United States and is invalid and unconstitutional, insofar as Plaintiff is concerned, upon this attack by him in this suit. It is, therefore,

### ORDERED AND ADJUDGED:

1. The Defendant is restrained and enjoined from enforcing, executing, administering, or in any way or manner giving effect to the provisions of Chapter 70–80, Laws of Florida, insofar as Plaintiff is concerned, and to the extent that

---

1. Under Wellman v. Adams, No. 39298, decided by the Supreme Court of Florida July 16, 1970, it would appear he could not be a candidate even if he submitted his resignation effective immediately.

he seeks to qualify and be a candidate for, and be elected to the office of, Representative in the Congress of the United States of America, and is mandatorily enjoined and required to allow Plaintiff to comply with and qualify with the election laws of Florida, and upon so doing, be allowed to be a candidate for, and seek election to, such office, in all respects, and as fully and to the same extent as though Chapter 70–80, Laws of Florida, were not in effect.

2. Jurisdiction is retained for the entry of such other or further orders as may be proper or necessary herein.