541 P.2d 623

**Aaron L. ROBINSON, Petitioner-Appellant,**

v.

**Del Roy C. BODILY, County Clerk of the County of Bonneville, State of Idaho, Defendant-Respondent on Appeal.**

**No. 11809.**

Supreme Court of Idaho.

Oct. 15, 1975.

Wayne L. Loveless, Pocatello, for petitioner-appellant.

Gary J. Jensen, Idaho Falls, for defendant-respondent on appeal.

McQUADE, Chief Justice.

This appeal is from a denial of a peremptory writ of mandamus seeking to have appellant's name placed on the general election ballot as an independent candidate. The facts are not in dispute and may be briefly stated.

Appellant, Aaron L. Robinson, was an unsuccessful candidate for the Republican Party nomination for the office of County Commissioner, Bonneville County, District No. 3, at the primary election held in August, 1974. On September 20, 1974, appellant sought to file with respondent, Del Roy C. Bodily, County Clerk of Bonneville County, a Declaration of Candidacy and Petition for Candidacy as an unaffiliated, independent candidate for the office of County Commissioner, Bonneville County. Appellant sought to have his name printed on the November, 1974, general election ballot.

Respondent rejected and refused to file appellant's Declaration and Petition for Candidacy, contending that he had no duty or authority under Idaho election laws to place appellant's name on the general election ballot. Appellant filed a petition and affidavit for a writ of mandamus seeking to compel respondent to accept his filings and to place his name on the general election ballot.

An alternative writ of mandamus was issued directing respondent to comply with appellant's request or to show cause why he should not do so. A return was made answering the petition, and a hearing was held in district court. The trial court entered its order quashing the alternative writ and denying the peremptory writ. Appellant appeals from that order.

Appellant assigns as error the trial court's refusal to hold: (1) that Idaho election laws deny equal protection of the law to persons seeking office at the general election as independent candidates because there is no provision for printing the names of independent candidates on the general election ballot; and (2) that Idaho election laws deny equal protection of the law to individual voters desiring to cast a vote for an independent candidate because they must write in the candidate's name on the ballot. We hold the Idaho election laws constitutional.

Before addressing the substantive issues raised on this appeal, we must first dispose of the question of mootness presented by this case. We may take judicial notice of the fact that the 1974 general election has been held and that appellant was unsuccessful in his write-in candidacy.[1] It is clear, therefore, that as a practical matter we are unable to grant appellant any relief. However, this fact alone does not render the appeal moot. Where issues of substantial public interest are presented by an appeal, it should not be dismissed as moot.[2]

The controversy at the heart of appellant's case remains alive. Respondent's position would indicate that challenges similar to appellant's are likely to arise again.[3] This is not a case where the laws giving rise to the alleged problem have been altered since the action was commenced.[4] Nor are the facts of this case such that the issues presented have been fully resolved by subsequent events.[5]

1. § 9–101, Idaho Code; *Cenarussa v. Peterson*, 95 Idaho 395, 396, 509 P.2d 1316 (1973).

2. *Nelson v. Marshall*, 94 Idaho 726, 728–729, 497 P.2d 47 (1972).

3. *Id.*

4. *Cenarussa v. Peterson, supra* note 1, 95 Idaho at 396, 509 P.2d 1316.

5. *See, e. g., State ex rel. Idaho State Park Bd. v. City of Boise*, 95 Idaho 380, 383–384, 509 P.2d 1301 (1973) ; *Tryon v. Baker*, 94 Idaho 222, 223, 485 P.2d 964 (1971) ; *Boyer v. Shoshone-Bannock Indian Tribes*, 92 Idaho 257, 259, 441 P.2d 167 (1968) ; *Dorman v. Young*, 80 Idaho 435, 436–437, 332 P.2d 480 (1958).

We turn, therefore, to the merits of the case. As a preliminary to our discussion, it will be helpful to set out briefly the structure of the pertinent election laws.[6] The election of public officials is carried out by means of primary and general elections.[7] The express purpose of primary elections is defined as " . . . nominating persons as candidates of political parties for election to office . . . "[8] The general election provides for the election of public officers from among the nominees of the political parties.[9] Provision is made for write-in candidates at both the primary and general elections.[10]

Individuals who wish to run for public elective office (including county commissioner) must meet certain qualifications[11] and file a declaration of candidacy prior to the primary election.[12] A candidate at a primary election must declare his or her party affiliation at the time of filing a declaration of candidacy.[13] The election laws define a "political party"[14] and set requirements for its creation, recognition and operation.[15] Finally, the law provides that all candidates for public elective office " . . . at general elections shall be nominated at the primary elections, or shall have their names placed on the general election ballot as provided by law. . . . "[16]

From the skeletal description of the election scheme, it is clear that an individual desiring to run for public elective office as an independent candidate, unaffiliated with any political party, does not fit into the primary election process. This would not in itself be troublesome, given the express function of the primary election in the overall process,[17] except that candidates " . . . at the general elections shall be nominated at the primary elections, or shall have their names placed on the general election ballot as provided by law . . . "[18] Thus, independent candidates, such as appellant, cannot have their names placed on the general election ballot, unless the last phrase of the requirement above quoted is applicable to independent candidates. Our research has disclosed no other provision in the Idaho election laws for the direct placement of the names of independent candidates on the general election ballot.[19]

Appellant argues that the case of *Phillips v. Curtis*[20] stands for the proposition that an independent candidate may file after the primary to have his or her name placed on the general election ballot as a matter of law. The *Phillips* case was decided on the basis of a statute not now in effect,[21] and thus is of no assistance to appellant. Appellant relies on the Equal Protection Clause of the Fourteenth Amend-

6. Title 34, Idaho Code.

7. §§ 34–101, 102, Idaho Code.

8. § 34–102, Idaho Code.

9. §§ 34–101, 34–1208, 1214, Idaho. Code.

10. §§ 34–702, 34–904, 906, 908, Idaho Code.

11. § 34–601 *et seq.*, Idaho Code; the qualifications for county commissioner are set out in § 34–617.

12. §§ 34–701, 704, 705, Idaho Code.

13. § 34–704, Idaho Code.

14. § 34–109, Idaho Code.

15. § 34–501, *et seq.* Idaho Code.

16. § 34–703, Idaho Code.

17. § 34–102, Idaho Code.

18. § 34–703, Idaho Code.

19. *See* S.L.1963, ch. 93, § 8, p. 291, amended S.L.1967, ch. 360, § 12, p. 1011; repealed S.L.1970, ch. 140, § 207, p. 351. Two points are of interest with respect to this former statute: (1) The statute (former § 34–612C) would have been of no avail to appellant as it was by its terms limited to candidates for national or state offices. (2) As amended in 1967 the statute required an independent to file as such before the nominating election, which would have been inconsistent with appellant's course of action here.

20. 4 Idaho 193, 38 P. 405 (1894).

21. S.L.1891, "Elections and Electors," § 28, p. 57; reenacted S.L.1899, Act of February 2, 1899, § 19, p. 33; codified Idaho Political Code, Sec. 792, 1901; Revised Code of Idaho, Political Code, Title IV. ch. 30, Secs. 541, 549, 1919 [S.L.1919, ch. 107, §§ 26, 34, p. 372]; repealed S.L.1931, ch. 18, § 49, p. 29.

ment to the United States Constitution,[22] but the United States Supreme Court has consistently recognized the arguments advanced by respondent as compelling.

■ Respondent argues the state has compelling interests in the integrity of the nomination and election process; in insuring the effectiveness of the citizens' suffrage right by limiting the number of names appearing on the ballot to prevent voter confusion; in requiring that candidates who are to appear on the ballot have a minimum amount of support and are serious and not frivolous candidates; and, in preventing the chaos that might result from permitting defeated primary candidates to have their names placed on the general election ballot by the simple expedient of filing a petition. In *Rosario v. Rockefeller*[23] the Court recognized the state's interest in preserving the integrity of its electoral process. In *Jenness v. Fortson*[24] the Supreme Court said:

"There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." [25]

And most recently, in *Storer v. Brown*,[26] the Supreme Court summarized its views as follows:

"The Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot. [Citations omitted.] In so doing, the State understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections. . . . [W]e are bound to respect the legitimate objectives of the State in avoiding overcrowded ballots. Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidates. [Citation omitted.]" [27]

So long as appellant has been denied only the placement of his name on the general election ballot, and not the right to be a candidate, the significant state interests served by the election laws must prevail.

Several states have statutes which specifically deny to defeated primary candidates the printing of their name on the general election ballot as independent candidates, although they remain eligible for election through write-in ballots. The courts which have been presented with challenges to such statutes have consistently upheld them.[28] The Supreme Court of the United States has also approved a statute of this type.[29]

■ We hold, therefore, that the election laws do not deny appellant equal protection of the law, nor do they abridge the free and equal exercise of the right of suffrage by those wishing to vote for inde-

---

22. U.S.Const., Amend. XIV, § 1, provides in part: " . . . No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

23. 410 U.S. 752, 761, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973).

24. 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

25. *Id.* at 442, 91 S.Ct. at 1976.

26. 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

27. *Id.* at 732–33, 94 S.Ct. at 1280.

28. *See, e. g., Mammon v. Schatzman*, 472 F.2d 114 (3rd Cir. 1972); *Rosenberg v. Queenan*, 261 S.W.2d 617 (Ky.1953); *State ex rel. McCarthy v. Moore*, 87 Minn. 308, 92 N.W. 4 (1902); *State ex rel. O'Sullivan v. Swanson*, 127 Neb. 806, 257 N.W. 255 (1934); and Annot., 143 A.L.R. 603 (1943).

29. *Storer v. Brown, supra* note 26, 415 U.S. at 735, 94 S.Ct. at 1281.

pendent candidates like appellant.[30] The Legislature has the duty to enact election laws; however, no provision has been made for placing the name of a defeated candidate on the general election ballot as an independent candidate. This court will not substitute its judgment for that of the Legislature. The district court properly denied the peremptory writ of mandamus.

Judgment *affirmed.*

Costs to respondent.

McFADDEN, DONALDSON, SHEPARD and BAKES, JJ., concur.

30. We emphasize that we do not reach the issue whether the Legislature can omit, consistent with the requirements of the federal and state constitutions, provisions in the election laws for access to the general election ballot by truly independent candidates. On the facts in this case that precise issue is not presented for our consideration.

*Compare* the election scheme considered by the Supreme Court in *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 10, 21 L.Ed. 2d 24 (1968), *with* those considered in *Storer v. Brown, supra* note 26, and *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974), and *with* that considered in *Jenness v. Fortson, supra* note 24.