21 P.3d 929

Michael J. LOOMIS, Petitioner–
Appellant,

v.

Vaughn KILLEEN, Sheriff of Ada County,
Lt. Laky, Ada County Jailer, and Mi-
chael Persoval, Parole Officer, Respon-
dent.

No. 25988.

Court of Appeals of Idaho.

March 22, 2001.

Review Denied April 13, 2001.

Michael J. Loomis, Boise, pro se appellant.

Hon. Alan G. Lance, Attorney General; Paul R. Panther, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Michael J. Loomis brought this habeas corpus action, alleging that he was being held unlawfully following his arrest for an alleged parole violation. A magistrate dismissed Loomis's petition, and the dismissal was affirmed by the district court. We conclude that Loomis's right to due process was violat-

ed when the Idaho Commission of Pardons and Parole delayed giving Loomis notice of the parole violation that was alleged to have occurred and failed to conduct a timely probable cause hearing on that allegation. However, because these constitutional violations do not presently entitle Loomis to release from custody, we affirm the magistrate's denial of habeas corpus relief.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In May 1998, Loomis was a parolee under the supervision of the Idaho Commission of Pardons and Parole (Commission). On May 22, 1998, he was arrested for an alleged parole violation pursuant to an agent's warrant issued by his parole officer. This warrant was supplanted by a Commission's warrant on June 12, which was served on Loomis that same day. Loomis alleges, and the respondents do not dispute, that the Commission's warrant provided the first notice he received of the nature of the alleged parole violation that was the basis for his arrest some twenty-one days earlier.

On June 17, 1998, Loomis filed a petition for a writ of habeas corpus, naming as respondents the county sheriff, a jailer at the county jail where Loomis was being held, and Loomis's parole officer. The petition alleged that Loomis had been held in custody for twenty-one days before receiving notice of the alleged parole violation and that he still had not been given a preliminary hearing on the violation. On June 29, 1998, while Loomis's petition was still pending, a preliminary hearing on the alleged parole violation was conducted by a Commission hearing officer. It resulted in a finding of probable cause to believe that a parole violation had occurred. A hearing for proof of the violation was held on July 6, 1998. The hearing officer found that Loomis had violated his parole conditions, and recommended revocation of Loomis's parole. The Commission held a final revocation hearing on September 23, 1998, after which the Commission followed the hearing officer's recommendation and revoked the parole.

Loomis filed amended petitions on July 8 and September 14, 1998. The second amended petition alleged, *inter alia*, that Loomis had been held in custody for twenty-one days without notice of the parole violation charge and had been held for thirty-eight days before receiving his preliminary hearing. The petition did not challenge the finding of a parole violation made at the July 6, 1998, hearing.

The respondents moved for summary judgment on Loomis's second amended petition. The magistrate granted this motion, holding that there had been no violation of Loomis's right to due process. Loomis appealed to the district court. The district court held that the delay in giving Loomis notice of the reason for his arrest was a due process violation, but also held that Loomis's claim based on this delay was moot because by the time Loomis filed his first habeas corpus petition, he had received written notice, in the form of the Commission's warrant, of the nature of the alleged violation. The district court further held that Loomis's probable cause hearing was timely because it was conducted within thirty days from service of the Commission's warrant, which the district court deemed to be compliant with Idaho Code § 20–229. Accordingly, although the district court disagreed with the magistrate regarding the occurrence of a constitutional violation, the district court affirmed the magistrate's determination that Loomis was not entitled to relief. Loomis now appeals from the district court's decision.

## II.

### ANALYSIS

The writ of habeas corpus is a constitutionally mandated mechanism to effect the discharge of an individual from unlawful confinement. *See* Idaho Constitution, Article I, § 6; I.C. § 19–4201, *et seq.*; *Mahaffey v. State*, 87 Idaho 228, 231, 392 P.2d 279, 280 (1964); *Gawron v. Roberts*, 113 Idaho 330, 333, 743 P.2d 983, 986 (Ct.App.1987). "The essence of habeas corpus is an attack upon the legality of a person's detention for the purpose of securing release where custody is illegal.... The writ is an avenue by which

relief can be sought where detention of an individual is in violation of a fundamental right." *In re Application of Robison,* 107 Idaho 1055, 1057, 695 P.2d 440, 442 (Ct.App. 1985). It may be used to challenge the revocation of parole or the violation of a parolee's constitutional rights during the course of parole revocation proceedings. I.C. §§ 19–4205(2)(b), 19–4213.

■ The Fourteenth Amendment to the United States Constitution prohibits states from depriving persons of liberty without due process of law. In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court established the minimum due process requirements for persons arrested for parole violations. The Court mandated a two-step process for the disposition of parole violation charges. The first step is a hearing to determine "whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485, 92 S.Ct. at 2602, 33 L.Ed.2d at 497. This "minimal" inquiry, which is in the nature of a preliminary hearing, is to be "conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest." *Id.* The parolee must be given notice of this hearing and an opportunity to appear, speak on his own behalf, and present documentary evidence or individuals who can give relevant information to the hearing officer. The parolee may also request that persons who have given the adverse information upon which the revocation proceeding is based be made available for questioning in the parolee's presence. *Id.* at 487, 92 S.Ct. at 2603, 33 L.Ed.2d at 497–98. *See also Brandt v. Idaho Commission for Pardons and Parole,* 135 Idaho 208, 16 P.3d 305 (Ct.App.2000). A finding of probable cause by a neutral hearing officer at the conclusion of this preliminary hearing will justify the parolee's continued detention. If probable cause is found, the second step mandated by *Morrissey* is a final hearing for the evaluation of contested evidence, a determination whether the alleged violation occurred, and, if so, a determination whether revocation of the parole is appropriate. *Id.* at 488, 92 S.Ct. at 2603, 33 L.Ed.2d at 498.

■ Loomis contends that by neglecting to conduct a preliminary hearing until June 29, 1998, thirty-eight days after his arrest, the Commission violated the *Morrissey* requirement that the preliminary hearing be held "as promptly as convenient after arrest." We agree.

Loomis's position is supported by this Court's decision in an analogous habeas corpus case, *Gawron, supra,* where a probationer was arrested for allegedly violating the terms of his probation agreement. *Gawron* filed a petition for habeas corpus two days after his arrest, alleging that he was entitled to be apprised of the charges against him and to a bail hearing or release from custody. The magistrate granted Gawron's petition, holding that the failure to conduct a *Morrissey* preliminary hearing within approximately forty-eight hours of Gawron's arrest was unreasonable. This Court affirmed the magistrate's finding of a due process violation and held that the magistrate had properly released Gawron from custody pending a preliminary hearing on the alleged probation violations. *Id.* at 336–37, 743 P.2d at 989–90. Here, Loomis's detention for thirty-eight days without a hearing does not compare favorably with the two-day delay that was found to be excessive in *Gawron.*

The respondents argue that *Gawron* is not relevant because it dealt with a probationer rather than a parolee. However, this distinction does not make *Gawron* wholly inapposite. In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the United States Supreme Court held that the *Morrissey* standards apply to probationers as well as parolees:

[The state] does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one. Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing,

under the conditions specified in *Morrissey v. Brewer* . . . .

*Id.* at 782, 93 S.Ct. at 1759–60, 36 L.Ed.2d at 661-62. Consequently, our decision in *Gawron* was based almost entirely upon *Morrissey,* a decision defining the legal rights of *parolees.* In *Gawron,* we described the interests at stake when an individual has been arrested:

> The *Morrissey* court emphasized the importance of holding a hearing "while information is fresh and sources are available." However, we believe a second and even more fundamental policy underlies *Morrissey* and subsequent decisions. An individual may not be deprived of his constitutionally guaranteed liberty without cause. Detention is to be avoided when no probation violation has occurred. As the Court has stated:
>
>> Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.
>
> *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478 (1971).

*Gawron,* 113 Idaho at 336, 743 P.2d at 989. Unquestionably, these considerations apply to probationers and parolees alike, although differences in probation and parole revocation procedures may compel differing assessments of the amount of delay that can be constitutionally tolerated before a preliminary hearing is conducted.

■■■■ The respondents next argue that the Commission did not violate Loomis's rights because his preliminary hearing was conducted within thirty days of service of the Commission's warrant and therefore complied with I.C. § 20–229, which provides:

> **Parole revocation hearing.**—Whenever a paroled prisoner is accused of a violation of parole, other than by absconding supervision or the commission of, and conviction for, a felony or misdemeanor offense under the laws of this state, or any other state, or any federal laws, the parolee shall be entitled to a fair and impartial hearing of such charges within thirty (30) days from the date the accused is served with the charges of the violation of conditions of parole subsequent to arrest and detention. The hearing shall be held before one (1) or more members of the commission for pardons and parole, or before an impartial hearings officer selected by the executive director.

The respondents' argument is untenable. First, the statute's requirement of a "hearing of such charges" refers to the second, final parole revocation hearing described in *Morrissey.* It is apparent that the Commission itself so interprets § 20–229, for the Commission's regulations specify that an alleged parole violator "is entitled to a preliminary hearing and an on-site hearing, *and is entitled to a hearing to determine guilt or innocence within thirty (30) days from the date the accused was served with the charges of the violation.*" I.D.A.P.A. 50.01.01.400.06.c.ii (emphasis added). Second, even if the statute could be interpreted to allow a thirty-day period for *Morrissey* preliminary hearings, it would not defeat Loomis's claim of a constitutional violation. As we stated in *Gawron* "If [a] right to due process was violated, compliance with Idaho's statutory process would not shield the state." *Gawron,* 113 Idaho at 336, 743 P.2d at 989.

A variety of factors may influence the duration of prehearing confinement that is constitutionally acceptable in a given case, including the availability of the Commission's evidence and the accessibility of a hearing officer. Here, however, the respondents have claimed no circumstance that justifies a lapse of thirty-eight days from Loomis's arrest until his preliminary hearing. Absent such a justification, the Commission's action in confining Loomis in the county jail for thirty-eight days before affording him a hearing to determine whether there was any reasonable ground for his arrest was palpably unreasonable and a deprivation of Loomis's liberty without due process.

■■■■ Loomis contends that the Commission also violated due process guarantees when it waited twenty-one days after his

arrest before giving him notice of the alleged parole violation for which he was being held. Loomis's argument draws support from *Morrissey*, which addresses the matter of notice as follows: "With respect to the preliminary hearing ..., the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged." *Morrissey*, 408 U.S. at 486–87, 92 S.Ct. at 2603, 33 L.Ed.2d at 497.

The respondents do not dispute that Loomis's first notice of the grounds for his arrest was provided by the service of the Commission's warrant. They contend, however, that the notice given to Loomis was timely because it complied with I.C. § 20–229A, which states:

> Within fifteen (15) calendar days following arrest and detention on a warrant issued by the Idaho commission for pardons and parole, the alleged parole violator shall be personally served with a copy of the factual allegations of the violation of the conditions of parole by a state probation and parole officer, a law enforcement official or other as designated by the executive director.

It is asserted that because Loomis was served with a copy of the Commission's warrant on the same day that it was issued, June 12, 1998, there was compliance with this statute. Therefore, according to the respondents, Loomis received adequate notice even though it was given some twenty-one days after his arrest. The respondents' argument once again fails to recognize the supremacy of constitutional standards. Compliance with § 20–229A does not relieve the Commission of the duty to afford due process for those who have been arrested for alleged parole violations. Under Idaho law, an agent's warrant for the arrest of a parolee, issued pursuant to I.C. § 20–227, may precede a Commission's warrant issued under I.C. § 20–228. Since the Idaho statutes establish no time limit within which a Commission's warrant must issue to replace an agent's warrant, according to the respondents' argument a parolee could be held indefinitely on an agent's warrant without notification of the basis for the arrest. This position is entirely irreconcilable with *Morrissey* and its progeny or with the most fundamental notions of due process. We therefore hold that the Commission's failure to give Loomis notice of the nature of the alleged parole violation for a period of twenty-one days following his arrest was a violation of due process.

■■■■ Loomis requests that we remedy the due process violations that occurred here by dismissing the parole violation charges and reinstating his parole. That is not an available remedy. When a parolee has not been afforded a timely preliminary hearing, the appropriate remedy generally is a release of the parolee from incarceration until such a hearing is conducted. In *Gawron*, we noted that the only relief afforded was the probationer's release from prehearing incarceration and that the delay in the *Morrissey* preliminary hearing did not deprive the court of jurisdiction with respect to the underlying probation violation charge nor prevent the probation officer from pursuing revocation of the probation. *Gawron*, 113 Idaho at 337, 743 P.2d at 990. *See also Brandt, supra* (stating that if the parolee has received a hearing of the second type mandated by *Morrissey*, he would not be entitled to relief merely because the preliminary revocation hearing was not granted or was untimely); *State v. Reutzel*, 130 Idaho 88, 93, 936 P.2d 1330, 1335 (Ct.App.1997) (holding that, absent oppressive conduct or prejudice to the defendant, one who is charged with a felony is not entitled to dismissal of the criminal charge as a remedy for unjustified delay in holding his preliminary hearing). Loomis has not shown that the delays involved here, although unjustified in duration, prejudiced his ability to present a defense at the July 6 final hearing where he was found guilty of the parole violation, or prejudiced his ability to present mitigating evidence at the September 23, 1998 hearing on the revocation issue. Therefore, no basis has been demonstrated for the relief he seeks.

■■■■ We acknowledge, however, that the magistrate here should have acted much more expeditiously on Loomis's initial habeas corpus petition and should have released

Loomis from custody until a preliminary hearing was conducted by the Commission. Instead, the magistrate allowed the respondents twenty-one days to respond before holding a hearing on Loomis's petition. This prolonged procedure deprived Loomis of the opportunity for a remedy for the Commission's constitutional errors.[1]

 In summary, although we find error both in the magistrate's failure to expedite the habeas corpus proceedings and in the magistrate's determination that the Commission did not violate Loomis's constitutional rights, we nonetheless affirm the magistrate's order dismissing the petition. By the time the magistrate acted on the petition, Loomis had received the requisite preliminary hearing at which probable cause for his incarceration was found, as well as subsequent hearings where the parole violation was found to have occurred and parole revocation was ordered. Thus, Loomis was no longer entitled to release from custody.[2]

■ Loomis also alleges errors by the hearing officer at the preliminary hearing, including the exclusion of one of Loomis's witnesses and the hearing officer's alleged reliance upon information in the file of a different parolee. However, because Loomis subsequently received an adequate final hearing at which he had a full opportunity to present his defense, we will not address his claims of errors in the preliminary hearing. *See State v. Mitchell,* 104 Idaho 493, 500, 660 P.2d 1336, 1343 (1983) (holding that error in the preliminary hearing conducted on a felony charge is not a ground to vacate a conviction where the defendant was subsequently found guilty in a fair trial); *State v. Walker,* 109 Idaho 356, 360–61, 707 P.2d 467, 471–72 (Ct.App.1985) (same). We have also considered Loomis's other claims of error in the habeas corpus proceedings and find them to be without merit.

## III.

## CONCLUSION

The Commission violated Loomis's right to due process through the delay in giving Loomis notice of the nature of the alleged parole violation for which he was arrested and delay in conducting a preliminary hearing on the allegation. However, because Loomis has not been entitled to release at any time after his belated preliminary hearing was conducted, we affirm the magistrate's order denying Loomis's petition for a writ of habeas corpus.

PERRY, J., concurs.

Chief Judge SCHWARTZMAN, SPECIALLY CONCURRING:

I fully concur in the opinion of this Court. I write only to note that this is the *second* decision in a very short period of time finding fault with the Idaho Commission of Pardons and Parole's procedures insofar as giving a parolee a timely preliminary hearing on an alleged parole violation. *See Brandt, supra.* It would behoove the Commission to attend to this recurring problem and institute a set of procedural safeguards, not limited to the promulgation of rules and regulations, to forestall further lawsuits in this area of its responsibility. Inmates are particularly attuned to their rights in this day and age, and have no reticence in calling the authorities to account on the slightest provocation.

---

1. Where a habeas corpus petition alleges a prima facie basis for immediate release from incarceration, a very prompt judicial response may be warranted. In *Gawron* for example, after the habeas corpus petition was filed in the morning, the magistrate conducted a hearing in the afternoon of the same day. *Gawron,* 113 Idaho at 331, 743 P.2d at 984.

2. Despite the mootness of Loomis's claim, we have elected to address the merits because the issue presents a question of significant public interest that would otherwise evade review. *See Brandt, supra; Gawron,* 113 Idaho at 332–33, 743 P.2d at 985–86.